SHEILA K. SEXTON, SBN 197608
BEESON, TAYER & BODINE, APC
1404 Franklin Street, 5th Floor
Oakland, CA  94612-3208
Telephone:     (510) 625-9700
Facsimile:      (510) 625-8275
Email:          ssexton@beesontayer.com»

Attorneys for Plaintiff
Teamsters Local 624

STEPHEN McKAE, SBN 66797
ALEXANDRA L. FOOTE, SBN 225695
WENDEL, ROSEN, BLACK & DEAN LLP
1111 Broadway, 24th Floor
Oakland, CA  94607
Telephone:     (510) 834-6600
Facsimile:      (510) 834-1928
Email:          afoote@wendel.com

Attorneys for Defendant
Clover Stornetta Farms, Inc.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEAMSTERS LOCAL 624,<br><br>Plaintiff,<br><br>v.<br><br>CLOVER STORNETTA FARMS, INC.,<br><br>Defendant. | Case No. C08-02463 SC<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Hearing Date:       September 5, 2008<br>Hearing Time:      10:00 a.m.<br>Courtroom:          1, 17th Floor<br>Judge:                  Hon. Samuel Conti<br>Complaint Filed:   May 14, 2008<br>Trial Date:            None Set |

1.      <u>Jurisdiction and Service</u>:

Defendant does not dispute that jurisdiction pursuant to section (a) of the LMRA, 29 USC 185(a) and venue are proper in this Court, except that Defendant contends that there are issues in the underlying case that fall within the exclusive jurisdiction of the National Labor Relations Board.  All parties have been served.

2.    Facts:

The Complaint concerns a pure contract dispute between the Employer and Teamsters Local 624 ("the Union") as to whether the pertinent collective bargaining agreement requires the Employer to arbitrate a dispute over interpretation and implementation of a maintenance of benefits and cost participation agreement concerning health benefits. The underlying dispute concerns interpretation of the collective bargaining agreement, including a Letter of Understanding ("LOU") that relates to medical benefits cost sharing and an agreement to cooperate in attempting to find a replacement medical plan during a period of high medical insurance cost inflation.

The Employer contends that the Union failed to exhaust its contract remedies and is not entitled to arbitration. The Employer also contends that this charge was not timely filed, that the current petition is barred by the statute of limitations under *Teamsters Union Local 315 v. Great Western Chemical Company*, 781 F.2d 764 (9th Cir. 1986).

The Union contends that it has complied with the requirements of the parties' grievance procedure and that the Employer is obligated to arbitrate the dispute.

The Employer has requested that a brief summary of the underlying dispute be included herein, as follows:

Health coverage has been provided under various plans of the North Coast Trust Fund, a Taft-Hartley pension trust fund. Under the 2001-2005 agreement, this was North Coast Trust Fund Plan 9. The quality and cost of the benefits have been a frequent subject of discussion and dissatisfaction during several past contracts. The cap has almost routinely been exceeded in the past two contracts. As a consequence, the employee participation provisions have been triggered on numerous occasions.

In 2002, there was a mid-contract change in plans that was intended to address some of the problems experienced with the immediately prior plan. The North Coast Trust Fund adopted North Coast Trust Fund Plan 9T at a considerable cost increase above the then-current plan base, though Plan 9T cost less than a projected 43% increase in the cost of Plan 9 that would have been borne, at least until April 2003, entirely by the employees. In concept, the switch to Plan 9T was to mitigate problems with the available benefits but also to give relief over time from the accelerating cost. The collective bargaining agreement was amended to raise the base rate from $434 per month to $661 per

2

month beginning December 1, 2002.  Either way, the cost increase for employees was considerable, but the Employer agreed to mitigate the impact by advancing the next 10% adjustment to the base rate (not due until April 1, 2003), to cover the months of December 2002 through the end of March 2003.  It was not required by the collective bargaining agreement to do that.  Beginning November 1, 2002, Plan 9T became the standard for determining equivalency of benefits, replacing North Coast Trust Fund Plan 9.

During the 2005 negotiations, the issue took a central role again.  The cost-sharing agreement was renewed, but due to past difficulties experienced by the Employer obtaining the Union's cooperation to find alternative plans, the parties negotiated a side agreement in the form of a Letter of Understanding ("LOU") to address specifically steps to be taken to locate a new plan.  The health benefits provisions, by then in Section 23, remained largely unchanged, with substitution of a new base rate of $783 per month.  The price to the Employer of obtaining that agreement on cooperation was a substantial alteration of the cost-participation provisions on an interim basis.  For one year, from April 2006 through March 2007, the LOU shifted to the Employer 50% of the incremental cost-sharing previously assigned to the covered employees as a cost of incentivizing the Union and its members to cooperate in the effort to find a new plan.

The issues concern whether Section 42 of the collective bargaining agreement requires Clover to arbitrate a dispute that arose under the Letter of Understanding, and thus under the collective bargaining agreement, as to whether Clover was entitled, beginning November 1, 2006, to require its employees to contribute a portion of the cost of Plan 9T.

Clover contends that it cannot be compelled to arbitrate, asserting that the six month statute of limitations bars the complaint.  *See Teamsters Union Local 315*, 781 F.2d 764, *supra*.  Clover also contends that the Union failed to pursue a timely grievance, otherwise failed to exhaust its contract remedies or to pursue them in a timely manner, and failed to satisfy a necessary condition precedent to arbitration that now bars the Union's claim such that Section 41(c) of the collective bargaining agreement bars further proceedings of any kind concerning this dispute. Section 42 of the collective bargaining agreement contains the grievance provisions.

A brief but incomplete chronology follows:

| Date | Event |
|---|---|
| March 1 and April 12, 2006 | Clover and the Union execute the Letter of Understanding, respectively. |
| October 17, 2006 | A meeting was held between representatives of the Union, Ralph Miranda and Phillip Ybarrolaza, and representatives of Clover at the Employer's offices to discuss their respective interpretations of the contract provisions on cost-sharing. |
| October 19, 2006 | Clover letter to the Union to confirm a request made at the October 17 meeting for an acknowledgement that the LOU had accomplished its purpose and would no longer be in effect beginning November 1, 2006, the effective date of the new North Coast Trust Fund Plan 9T. |
| October 30, 2006 | Clover posted a notice on its bulletin board announcing the change in coverage under Plan 9T and the effective deductions to be taken from the bi-monthly paychecks effective November 1, 2006, with the first deduction to be taken November 21. |
| November 1, 2006 | The Union responded in a letter from Mr. Miranda, saying, in part, " I understand Clover's thoughts regarding the Letter of Understanding of March 1, 2006 concerning the replacement of North Coast Trust Fund Plan 9T but the conditions required to terminate the Letter of Understanding do not exist." |
| November 7, 2006 | Another copy of the October 30 notice is included with paychecks issued on November 7, 2006. |
| November 20, 2006 | Clover responded to the Union rejecting the position in the November 1 letter. |
| November 21, 2006 | Clover takes bi-weekly payroll deduction from paychecks for employee cost-sharing. The full 100% over the cost cap was deducted from monthly paychecks to cover the employees' cost-sharing obligation under to Section 23 of the collective bargaining agreement. |
| November 27, 2006 | Union signs a receipt for the November 20 letter. |
| November 29, 2006 | Meeting between Clover and Ralph Miranda in which the parties discussed their conflicting interpretations of the LOU |
| December 12, 2006 | Meeting between Clover and Ralph Miranda in which the parties discussed their conflicting interpretations of the LOU |
| December 29, 2006 | Union sends a letter to Clover asserting a grievance under the collective bargaining agreement. The letter asks Clover to agree pursuant to Section 41 paragraphs (d), (e) and (f) of the agreement to "circumvent a board of adjustment and request this matter be submitted directly to an impartial arbitrator for final and binding resolution." The letter showed a December 27 date in the header and in the office postage meter stamp, but the United States Post Office meter marked the letter December 29. The letter was received January 2, 2007 |
| January 30, 2007 | Clover responds to the grievance letter dated December 27 but not mailed until December 29, disputing the claim and "requesting a Board of Adjustment during the week of February 5-9, 2007, though we would be very interested in meeting with you one more time to review our disagreements and provide resolution of the letter of understanding." Clover adds, "In requesting a Board of Adjustment over the issues addressed in your December 27, 2006 letter, Clover-Stornetta Farms does not waive any objection or defense to these claims, including defenses that the grievance is not timely [under the requirement of Section 41(d) to "submit the matter to the Board of Adjustment within sixty (60) days after |

| | | |
|---|---|---|
| | | notice of the grievance is first received by the responding party"], that contract remedies have not been exhausted, or that the issues are not arbitrable. However, we continue to evaluate whether those or other defenses to these claims apply." |
| | February 10, 2007 | Meeting between Clover and the Ralph Miranda in which the parties discussed their conflicting interpretations of the LOU |
| | February 22, 2007 | Meeting of a meeting of the bargaining parties and their respective counsel. Clover again expressly reserved its rights under the arbitration language of the contract. No resolution was reached and the Union again requested arbitration without going through the Board of Adjustment. Clover declined to do so but again offered to go to a Board of Adjustment. A discussion ensued about composition of a Board of Adjustment, because the Employer understood that the representatives on the Board are to be selected from outside the disputing parties. Clover wanted to bring other knowledgeable members of the industry, both labor and management, to the discussion. |
| | March 29, 2007 | Meeting of the bargaining parties without counsel. The meeting was attended by a business representative of the Union, Bob Carr, and the Employer's former president, Gary Imm, so the discussion could draw upon their recollections as to the history of the cap provision. The Union's request to take the matter directly to arbitration and bypass the Board of Adjustment was again rejected by Clover. The possibility of submitting the matter to early neutral evaluation to obtain an advisory opinion from a mediator was discussed but not agreed. |
| | April 16, 2007 | Sylvia Proctor, the Employer's Human Resources Director, sent Ralph Miranda an email with proposed minutes of the March 29 meeting attached. Conflicting recommendations of the two parties as to possible steps to take in an effort to resolve the status of the LOU appear in part B of that memorandum. Neither included arbitration. |
| | May 11, 2007 | Sylvia Proctor received a voice message from Ralph Miranda stating he had received her email of April 16, 2007 but had not reviewed it in detail. He stated he was leaving for vacation and would get back to her upon his return. |
| | June 11 or 12, 2007 | Ralph Miranda and Philip Ybarrolaza left a voice message with Sylvia Proctor asking her to contact them. Ms. Proctor was traveling on vacation. |
| | June 13, 2007 | Sylvia Proctor returned the June 11 or 12 call, leaving messages for both Ralph Miranda and Philip Ybarrolaza. Her call was not returned. |
| | November 2, 2007 | Ralph Miranda contacts Sylvia Proctor by telephone saying that he wanted to meet, but that if Clover would not meet again on the issue, he wanted to take the matter to a Board of Adjustment. |
| | November 27, 2007 | Sylvia Proctor responded by letter to Mr. Miranda's November 2 request, saying in part:<br><br>The contract specifies that "The parties will attempt to resolve the dispute informally, but if they are unable to do so, either party may submit the matter to the Board of Adjustment within sixty (60) days after notice of the grievance is first received by the responding party. This time limit may be extended in an individual case by written agreement of the parties." We have not received any request to extend the time.<br><br>Because of the lapse of time without any communication, our position under the agreement is to consider this matter of health and welfare cap on cost sharing concluded and we are not prepared to reopen it at this late date. |

| November 30, 2007 | Ralph Miranda responded to Sylvia Proctor's November 27 letter saying in part: |
|---|---|
| | Let me remind you that the parties are continuing informal discussions about this grievance in at least two areas.  First, identifying or framing the issue and second; utilizing FMCS/SMCS or "Early Neutral Evaluation." |
| | Finally, you are correct in that the time limit may be extended in an individual case by written agreement of the parties and no written agreement to extend the sixty days exist.  Therefore we consider the matter unresolved, the parties remain in violation of the working agreement and we hereby request to meet in either a board of adjustment or submit the matter to arbitration for a final and binding resolution. |
| | If we do not hear back from the company within 10 days of mailing this request we intend to file an unfair labor practice charge and inform the membership of this pending dispute. |
| January 10, 2008 | The Union files a charge concerning the dispute with the NLRB, Case No. 20-CA-33755. |
| February 5, 2008 | Clover files a position statement with the NLRB in response to the Union's charge in Case No. 20-CA-33755. |
| On or about March 28, 2008 | Clover receives notice from the NLRB that the charge in Case No. 20-CA-33755 has been dropped at the Union's request. |
| May 14, 2008 | The Union's complaint in the current proceeding filed |

3.    Legal Issues:

*Teamsters Union Local 315*, 781 F.2d 764, *supra* holds that the statute of limitations for a petition to compel arbitration under a collective bargaining agreement is six months.  The six months begins to run from the time one party makes it clear that it will not submit the matter to arbitration. *Id*. at 769; *see also United States Postal Service v. American Postal Workers Union, ALF-CIO*, 893 F.2d 1117, 1122 (9th Cir. 1990), cert. denied, 498 U.S. 820, 112 L. Ed. 2d 42, 111 S. Ct. 67 (1990); *Local Joint Executive Board of Las Vegas v. Exber, Inc.*, 994 F.2d 674 (9th Cir. 1993).  Clover also contends that the statute of limitations, which is borrowed Section 10(b) of the National Labor Relations Act, 29 U.S.C. Section 160(b), may be held to run when the aggrieved party has failed to exercise "reasonable diligence" which would have discovered the unfair labor practice.  *See, e.g*., *Concourse Nursing Home*, 328 NLRB 692, 693-694 (1999); *R. G. Burns Electric*, 326 NLRB 440, 441 (1998).  The parties dispute the application of the statute of limitations to the present facts.

It is the Union's position that this case involves a question of procedural arbitrability, which is a determination reserved for an arbitrator rather than the court.  *See Wiley and Sons v. Livingston*, 376 U.S. 556 (1964).

4.    <u>Motions</u>:

There are no pending motions.  Plaintiff expects to file a motion for summary judgment.

5.    <u>Amendment of Pleadings</u>:

No amendments to the complaint are anticipated.

6.    <u>Evidence Preservation</u>:

Clover and Plaintiff have been instructed to preserve all relevant documents, including electronically-recorded material.

7.    <u>Disclosures</u>:

Clover's initial disclosure under Federal Rule of Civil Procedure 26 was submitted on August 7, 2008.  In addition to the names and addresses of Clover managers involved in communications with the Union concerning the underlying dispute, the initial disclosure includes relevant correspondence and bargaining agreements.

Plaintiff's initial disclosure under Federal Rule of Civil Procedure 26 was submitted on August 14, 2008.  In addition to the names and addresses of Plaintiff's officers and employees involved in communications with the Defendant concerning the underlying dispute, the initial disclosure includes copies of correspondence and e-mails related to the processing of the grievance.

8.    <u>Discovery</u>:

No discovery has been taken.  Clover intends to request internal documents of the Union, including electronically stored information, relevant to the course of meetings and communications between the Union and Clover.  These will be documents related to the underlying grievance and compliance with the dispute resolution provisions of the collective bargaining agreement.  Clover intends to serve a set of interrogatories to identify every person having knowledge of the course of the dispute and the manner by which the Union processed and pursued the grievance toward arbitration.  Clover likely will depose Ralph Miranda, Phil Ybarrolaza and Bob Carr, Union officials involved in processing the underlying grievance.  Depending on the nature of disclosures during

JOINT CASE MANAGEMENT CONFERENCE STATEMENT
Case No. C08-02463 SC

90881.doc

1  discovery, Clover may depose other witnesses.

2  Plaintiff believes that the case can be resolved through early motions for summary judgment,

3  but reserves the right to conduct discovery including depositions of Defendant's managers involved

4  in the matter and document requests.

5  9.  Class Actions:

6  Not applicable.

7  10.  Related Cases:

8  The Union filed a charge concerning the underlying dispute with the NLRB on January 10,

9  2008 under Case No. 20-CA-33755.  On February 5, 2008, Clover filed a position statement with the

10  NLRB in response to the Union's charge.  On or about March 28, 2008, Clover received notice from

11  the NLRB that the charge in Case No. 20-CA-33755 has been dropped at the Union's request.

12  11.  Relief:

13  The Union seeks only an order compelling arbitration.

14  12.  Settlement and ADR:

15  The Complaint concerns only a request for an order compelling arbitration.  The parties will

16  not agree to arbitration and believe that mediation would likely be unproductive after the lengthy

17  course of prior settlement efforts.

18  13.  Consent to Magistrate Judge for All Purposes:

19  Clover submitted a request for reassignment to a District Court Judge and will not consent to

20  a magistrate judge to conduct further proceedings.

21  14.  Other References:

22  Clover will not consent to arbitration or a special master.  The action is not suited to

23  assignment to the Judicial Panel on Multidistrict Litigation.

24  15.  Narrowing of Issues:

25  It is the Union's position that the case is one of procedural arbitrability.

26  Clover has not seen enough of the Union's position or version of the facts to state how issues

27  may be narrowed at this time.

28

JOINT CASE MANAGEMENT CONFERENCE STATEMENT
Case No. C08-02463 SC

16.    Expedited Schedule:

None.

17.    Scheduling:

Hearing on dispositive motions by January 2009.

18.    Trial:

Neither party requests a jury trial.  The parties anticipate that a trial could be conducted in 1 - 4 days

19.    Disclosure of Non-party Interested Entities or Persons:

Clover filed its certification on August 1, 2008, saying, "Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report."  Plaintiff filed an identical statement on August 13, 2008

20.    Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.

None.

Dated:  August 15, 2008                          BEESON, TAYER & BODINE, APC


                                                 By:        /s/Sheila K. Sexton
                                                       SHEILA K. SEXTON
                                                 Attorneys for Teamsters Local 624

Dated:  August 15, 2008                          WENDEL, ROSEN, BLACK & DEAN LLP


                                                 By:        /s/Alexandra L. Foote
                                                 Attorneys for Clover Stornetta Farms, Inc.