UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENERAL TRUCK DRIVERS, WAREHOUSEMEN & HELPERS UNION LOCAL NO. 624, INTERNATIONAL BROTHERHOOD OF TEAMSTERS,<br><br>Plaintiffs,<br><br>v.<br><br>CLOVER STORNETTA FARMS, INC.,<br><br>Defendants. | No. C-08-2463 SC<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

This litigation arises out of a labor dispute between Plaintiff, the General Truck Drivers, Warehousemen & Helpers Union Local 624 ("the Union"), and Defendant Clover Stornetta Farms, Inc. ("Clover"). The substance of that labor dispute is not before the Court. Rather, the Union filed this suit to compel Clover to arbitrate the parties' dispute pursuant to the terms of their collective bargaining agreement. The parties filed cross-motions for summary judgment, and both motions have been fully briefed. See Docket Nos. 15 ("Union Mot."), 23 ("Clover Opp'n"), 27 ("Union Reply), 18 ("Clover Mot."), 24 ("Union Opp'n"), 26 ("Clover Reply"). Having reviewed both parties' submissions, the Court hereby GRANTS the Union's motion for summary judgment and DENIES Clover's motion for summary judgment for the reasons set forth below.

## II. BACKGROUND

In April 2005, the Union and Clover entered into a collective bargaining agreement to cover the period from April 1, 2005, to March 31, 2009. Proctor Decl. ¶ 6, Ex. A ("Agreement").[1] For the four-year period preceding the Agreement, Clover provided health coverage to its employees under various plans of the North Coast Trust Fund, a Taft-Hartley welfare benefit trust fund. Id. ¶ 7. During this period, if the cost of providing benefits under that plan exceeded an agreed-upon cap, Clover was entitled to purchase a substitute plan, or, if an equivalent plan could not be found, to require covered employees to pay the incremental cost of coverage above the cap. See id. The current version of the Agreement contains a similar provision for maintenance of benefits. See Agreement § 23; Benedetti Decl. ¶ 6.[2] After entering the Agreement, and in order to obtain the Union's cooperation in finding more cost-effective health plans, Clover further agreed to pay 50% of the cost in excess of the agreed-upon cap for one year, beginning in April 2006. Benedetti Decl. ¶ 6. This agreement was memorialized in a Letter of Understanding between the parties, dated March 1, 2006. Id. ¶ 6, Ex. A. ("LOU").

After adopting the LOU, Clover began searching for a new

---

[1] Sylvia Proctor, the Director of Human Resources for Clover, submitted a declaration in support of Clover's motion. Docket No. 19.

[2] Gene M.B. Benedetti, the Vice President of Product Research and Development for Clover, submitted a declaration in support of Clover's motion. Docket No. 20.

health plan to cover its employees. During this same period, the existing plan, North Coast Trust Fund Plan 9T, underwent substantial revisions, which Clover claims made that plan more affordable. See Proctor Decl. ¶ 11. Clover apparently continued with this plan and billed the entire amount of the premium in excess of the Agreement's cap directly to the employees, without covering the 50% agreed upon in the LOU. See id. The parties disagree about whether or not each side complied with the terms of the LOU. See Clover Mot. at 6-7; Proctor Decl. ¶¶ 12-15, Exs. B, C, D.

The parties agree that the dispute regarding the LOU falls within the arbitration provisions of the Agreement. See Union Mot. at 5-6; Clover Opp'n at 2. Section 41 of the Agreement contains the multi-stage dispute resolution process governing the parties' relationship. See Agreement § 41. First, the employee or Union must file a written grievance with Clover within thirty days after whatever conduct by Clover gave rise to the dispute. Id. § 41(c). The parties will then attempt to resolve the dispute informally if possible. Id. § 41(d). If that fails, within sixty days of the initial notice of the grievance, the parties may submit their dispute to a "Board of Adjustment" composed of two Union representatives and two Clover representatives. Id. § 41(d), (e). If the Board of Adjustment deadlocks, either party may submit the dispute to binding arbitration. Id. § 41(f).

On or about December 27, 2006, the Union sent its formal written grievance to Clover, requesting that the parties "circumvent a [B]oard of [A]djustment" and that the "matter be

3

1  submitted directly to an impartial arbitrator for final and
2  binding resolution."  Miranda Decl. ¶ 6, Ex. E.[3]  Clover received
3  the grievance letter on January 2, 2007.  Proctor Decl. ¶ 18.  In
4  a letter dated January 30, 2007, Clover requested that the dispute
5  be submitted to a Board of Adjustment pursuant to section 41(d) of
6  the Agreement.  Id. ¶ 19, Ex. F.  Clover also said in the same
7  letter that it would be willing to meet with the Union one more
8  time to attempt informal resolution.  Id. Ex. F.

9      The parties met on February 22, 2007, to discuss the dispute.
10 Miranda Supp. Decl. ¶ 3; Proctor Decl. ¶ 20.  During this meeting,
11 the Union again proposed submitting the dispute directly to
12 arbitration without convening a Board of Adjustment, and Clover
13 again refused arbitration but offered to go to the Board of
14 Adjustment.  Proctor Decl. ¶ 20.  The parties failed to resolve
15 either the central dispute over interpretation of the LOU or the
16 dispute over whether to arbitrate.  Id.  On March 27, 2007, the
17 parties met again to discuss the same issues, but again failed to
18 reach any resolution.  Id. ¶ 21.  By email on April 5, Clover
19 indicated its support for "a mediation process to assist in the
20 resolution of the LOU."  Miranda Supp. Decl. Ex. A.  Clover issued
21 minutes from the March 27 meeting on April 16, reflecting that the
22 parties had not reached an agreement on the interpretation of the
23 LOU and that the parties had considered taking the dispute to a
24 state or federal mediation program, and indicating that Clover's

---

[3] Ralph Miranda, the Union's Secretary-Treasurer, submitted a declaration in support of the Union's motion.  Docket No. 16.  Miranda also submitted a supplemental declaration in support of the Union's Opposition.  Docket No. 25.

4

1 preference was to engage in Early Neutral Evaluation ("ENE")
2 rather than formal mediation. Proctor Decl. Ex. G.  Clover
3 suggested that if the ENE was unsuccessful, the mediator could
4 issue an advisory opinion about the possible outcome of
5 arbitration. Id.  Following the advisory opinion, Clover
6 suggested that the parties would meet to either accept the opinion
7 or proceed to another forum. See id. The parties exchanged voice
8 mail messages regarding a possible meeting in June 2007, but did
9 not actually meet. Proctor Decl. ¶¶ 23-24; Miranda Supp. Decl. ¶
10 7.

11 In November 2007, the Union contacted Clover and suggested
12 that parties forego the proposed mediation and proceed with a
13 Board of Adjustment. Miranda Supp. Decl. ¶ 8; Proctor Decl. 24.
14 In a letter dated November 27, 2007, Clover declined to
15 participate in the Board of Adjustment, stating that the sixty-day
16 period for initiating the Board of Adjustment following the
17 grievance had expired. Proctor Decl. ¶ 25, Ex. H.  Clover stated
18 that it considered the matter concluded and that it would not
19 reopen the grievance. See id. Ex. H; Miranda Supp. Decl. ¶ 8.

20 The Union filed this suit to compel arbitration under the
21 Agreement on May 14, 2008. See Compl., Docket No. 1.

### III. **LEGAL STANDARD**

24 Entry of summary judgment is proper "if the pleadings, the
25 discovery and disclosure materials on file, and any affidavits
26 show that there is no genuine issue as to any material fact and
27 that the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(c).  "Summary judgment should be granted where the evidence is such that it would require a directed verdict for the moving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).  Thus, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  In addition, entry of summary judgment in a party's favor is appropriate when there are no material issues of fact as to the essential elements of the party's claim.  <u>Anderson</u>, 477 U.S. at 247-49.

**IV.  <u>DISCUSSION</u>**

The parties have, in the course of briefing these motions, narrowed the question before the Court to whether or not the Union's suit is barred by the applicable statute of limitations.  In a suit to compel arbitration under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, the appropriate limitations period is the six-month period established for bringing unfair labor practice charges before the National Labor Relations Board.  See <u>Teamsters Union Local 315 v. Great W. Chem. Co.</u>, 781 F.2d 764, 769 (9th Cir. 1986).  "[T]he six-month period begins to run from the time one party makes it clear that it will not submit the matter to arbitration."  <u>Local Joint Exec. Bd. of Las Vegas v. Exber, Inc.</u>, 994 F.2d 674, 675 (9th Cir. 1993).  "[T]o start the statute of limitations running, an unequivocal,

express rejection of the union's request for arbitration must be communicated to the union. Constructive notice is not sufficient." Id. at 676. The only dispute here is whether Clover's communications to the Union prior to November 2007 amount to "an unequivocal, express rejection" of the request for arbitration. The Court finds that they do not.

The evidence submitted does not support Clover's assertion that it clearly and consistently refused to take the dispute to arbitration. First, Clover overstates the contents of its written communications to the Union. For example, in its Opposition to the Union's motion, Clover claims that in its January 30, 2007 letter to the Union, it "unequivocally said 'no' to the Union's request to submit the dispute directly to arbitration." Clover Opp'n at 17. The letter in question, while proposing a date for the Board of Adjustment, never even mentions arbitration. See Proctor Decl. Ex. F. Similarly, Clover overstates the significance of its oral communications with the Union. In its Reply supporting its own motion, Clover asserts that arbitration "was not even considered as one of the possibilities for resolution of the dispute" at the March 27, 2007, meeting. Clover Reply at 5. The minutes of that meeting, prepared by Clover, suggest otherwise, as Clover recommended that the parties participate in ENE and ask a mediator "to provide an advisory opinion of a probable outcome of an arbitration hearing." Proctor Decl. Ex. G. The recommendation clearly indicates that Clover had not ruled out arbitration absolutely, and makes no mention of the Board of Adjustment. See id. The same recommendation leaves

7

unanswered how the parties might proceed after receiving the mediator's opinion, but does not expressly and unequivocally rule out arbitration. See id. In the six months following those minutes, the only communications between the parties were two voice mail messages, neither of which appears to be an express refusal to arbitrate. See Proctor Decl. ¶¶ 23-24. In short, each time the parties attempted to resolve the LOU dispute informally, they continued to debate the means of pursuing a formal resolution. At no point prior to November 27, 2007, did Clover expressly and unequivocally refuse to arbitrate. Clover's legal argument is similarly flawed. Perhaps recognizing that the evidence does not support its claim of an express refusal to arbitrate, Clover argues that the Union failed to exercise reasonable diligence in bringing this suit because it was on notice that Clover would not arbitrate. See, e.g., Clover Opp'n at 19. In essence, Clover asserts that based on its conduct, the Union "should have known" that it would not go to arbitration. A "reasonable diligence" standard is contrary to the governing law, however, as the Ninth Circuit has rejected anything short of express, unequivocal notice. See Exber, 994 F.2d at 676. Clover draws its "reasonable diligence" standard from R.G. Burns Electric, Inc., 326 N.L.R.B. 440 (1998). That case addressed an unfair labor practices charge brought under section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). Id. at 441. While section 10(b) provides the origin for the six-month statute of limitations in suits to compel arbitration, see Teamsters Local 315, 781 F.2d at 769, decisions interpreting that provision in the

8

context of National Labor Relations Board proceedings do not supplant binding Ninth Circuit precedent here.

The Court acknowledges that the standard for evaluating whether a refusal to arbitrate is express and unequivocal is unclear. See NLRB v. Jerry Durham Drywall, 974 F.2d 1000, 1004 (8th Cir. 1992) ("a repudiation need not be an express, written repudiation but instead can be manifested in a variety of ways"); In re Diamond D Constr. Corp., 15 F. Supp. 2d 274, 289 (W.D.N.Y. 1998) ("the Exber court did not explain what conduct constitutes an unequivocal refusal to arbitrate and what conduct merely provides constructive notice."). Despite this, the Court finds that on the evidence presented, Clover's refusal to arbitrate was neither express nor unequivocal prior to the November 27, 2007, letter to the Union. The Union's Complaint, filed May 14, 2008, was therefore timely.

**V.    FEES**

The Union also requests that the Court award it the attorney's fees and costs of suit it incurred in bringing this action. See Compl. at 4; Union Mot. at 7-8. There are circumstances in which the Court may award attorney's fees to the prevailing party. See, e.g., Alyeska Pipeline Serv. Co. v. Wilderness Society, 421 U.S. 240, 258-89 (1975). However, the Court finds that the Union has not sufficiently demonstrated that Clover acted in bad faith or for any other oppressive or unlawful reasons which would warrant an award of fees. The Court therefore declines to award the Union its attorney's fees and costs of suit.

**VI. CONCLUSION**

For the foregoing reasons, the Court finds that the Union filed its Complaint in a timely manner. The Court therefore GRANTS the Union's Motion for Summary Judgment and DENIES Clover's Motion for Summary Judgment. The parties shall submit their dispute regarding the interpretation of the LOU to the procedures outlined in section 41(d)-(f) of the Agreement.

IT IS SO ORDERED.

Dated: February 19, 2009

_____
UNITED STATES DISTRICT JUDGE